MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROBIN L. HARRIS (CABN 123364)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorneys
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. CR 12-111 EMC |
| | )     CR 12-642 EMC |
| Plaintiff, | ) |
| | ) **UNITED STATES' RESPONSE TO** |
| v. | ) **DEFENDANT'S SENTENCING** |
| | ) **MEMORANDUM** |
| WILLIAM WISE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

Defendant has filed a sentencing memorandum that, to distract from the enormity of his fraud, second-guesses the charging and 5K decisions left by the Constitution, the laws of the United States, and the plea agreement in this very case to the sole discretion of the Executive Branch—here, the United States Attorney's Office for the Northern District of California. Specifically, defendant attacks the government's decision not to file a motion with this Court for a downward departure pursuant to U.S.S.G. § 5K1.1. Defendant further criticizes the government for not informing defense counsel of the content of the internal decision making process at the Department of Justice that led to the government's dismissal of charges against Hoegel, and even requests an evidentiary hearing "on the government's decision to not move for a downward departure in this case." Dkt. 115 at 1. The government files this brief to respond to these arguments.

# ARGUMENT

Under the plea agreement in this case, defendant agreed "that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its *sole and exclusive decision* of whether I have provided substantial assistance and *that decision will be binding on me*." Dkt. 33 at 9 (emphasis added). The government promised that, "[i]f in its sole and exclusive judgment, [it] decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure." Dkt. 33 at 11. It is left to the sole discretion of the government as to whether defendant has provided substantial assistance in the prosecution of another person under § 5K1.1, and neither the government nor its attorneys are under any obligation to defendant to explain their decisions to him. Instead, under Ninth Circuit law, so long as such a decision is made in good-faith, courts should not "'intimate [any] view as to whether a government motion under [] § 5K1.1 is or is not in order.'" *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002) (quoting *United States v. Drown*, 942 F.2d 55, 60. n.3 (1st Cir. 1991)) (alterations in original).

The government made a good-faith analysis of whether defendant had successfully provided substantial assistance in the prosecution of another person, and that analysis is outlined in the government's sentencing memorandum. Dkt. 114 at 2–3. In this case, the absence of substantial assistance in the investigation and prosecution of another person is self-evident. Hoegel and defendant were indicted at the same time; defendant then began cooperating with the government; charges were later dismissed against Hoegel; and no one else has ever been indicted as a result of defendant's cooperation. Government counsel is not obligated to explain its reasoning any further than that, and any further explanations of the internal process and analysis that led to such a decision would require the government to disclose information subject to the attorney-client, attorney work product, and deliberative process privileges. *See NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975) (stating that deliberative process privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated" (quotation

marks omitted)); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (deliberative process privilege "shields certain intraagency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny").

Defendant next attempts an end-run around the government's discretion to not move for a downward departure under 5K1.1 by attacking the government's decision to exercise its prosecutorial discretion and policymaking judgment to dismiss charges against Hoegel, thereby depriving defendant of his opportunity to aid in the prosecution of another person. This is an inquiry into the core of executive authority and discretion, and is thus foreclosed. *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004) (noting that attorney-client, work product, deliberative process, and executive privileges apply to various aspects of decision regarding 5K motion). As the Seventh Circuit has explained, a "district judge had no more basis for demanding that the Executive Branch open its internal deliberations [on a 5K request] than Congress would have for demanding that every Presidential veto message include all background papers circulated inside the government, a description of any debate within the Cabinet, and a disclosure of all dissenting voices (together with the reasons those officials gave for their views)." *Id.*

Under the Constitution, the executive power is vested in the President, who is required to "take care that the laws be faithfully executed." U.S. Const. Art. II, Sec. 3. "That duty can be delegated to subordinates, including the attorney general and the U.S. attorneys serving in each judicial district." *United States v. Navarro-Vargas*, 408 F.3d 1184, 1205 (9th Cir. 2005). "Notwithstanding Article II's instruction to take care that the laws are faithfully executed, the president and those who represent him have broad independence in their prosecutorial decisions." *Id.* at 1206; *see also United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977). "The discretionary power of the attorney for the United States in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). "Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution

in a particular case." *Id.* "It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *Id.* "Allocating their resources, [United States Attorneys] decide whether those resources are better put to prosecuting narcotraficantes, 21 U.S.C. § 1906; government fraud, 18 U.S.C. § 1031, and public corruption, 18 U.S.C. § 666; or to pursuing unlawful transportation of dentures, 18 U.S.C. § 1821; disruption of zoos, circuses, and rodeos, 18 U.S.C. § 43; or parking violations committed on federal lands, 36 C.F.R. § 4.13." *Navarro-Vargas*, 408 F.3d at 1205.

In an attempt to equate defendant's conduct with Hoegel's and blame the government for not prosecuting her for the Ponzi scheme defendant masterminded and implemented, defendant's sentencing memorandum spends a full seven pages discussing the evidence as to whether or not Hoegel knew that the Millennium Entities for which she sold CDs were in fact a massive Ponzi scheme organized by defendant. Dkt. 115 at 15–22. The evidence against Hoegel has nothing to do with an appropriate sentence for defendant under the Sentencing Guidelines, § 3553, or common sense. As the government explained in its sentencing memorandum, Dkt. 114 at 6–7, the non-sentence of an individual who has not been convicted of a crime does not qualify as relevant to this Court's sentencing determination under § 3553(a)(6), which directs this Court to look at disparities among defendants "who have been found guilty of similar conduct." To the extent that the evidence discussed is relevant, it only underscores defendant's enormous culpability for this crime. That defendant used many other people, including Hoegel, as part of his scheme is not a mitigating factor but rather an aggravating one—and one specifically contemplated by U.S.S.G. § 3B1.1(a). Defendant does not deserve credit for enlisting others in his scheme.

Defendant's inquiry into whether a currently uncharged and not convicted individual was culpable, in some sense, for defendant's massive scheme raises serious constitutional and practical problems. In determining whether to initiate or sustain a prosecution, the government relies on "such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607 (1985). It is hardly unusual that defendants are not convicted

of crimes that they may have committed, because our system of justice builds in serious burdens and hurdles that every prosecution must clear—the most important of which is the requirement of proof beyond a reasonable doubt.  This Court's task is to follow the prescriptions of § 3553(a) and focus on this defendant, the crime he committed, and the sentences of others convicted of similar crimes.

As a final matter, defendant's various arguments on these points are laden with chutzpah.  *See generally United States v. Sar-Avi*, 255 F.3d 1163 (9th Cir. 2001) (discussing the Ninth Circuit's "nascent consideration of chutzpah jurisprudence").  Defendant, who recruited Hoegel into the fraud and profited enormously from her conduct as well as the conduct of many other knowing or unknowing participants, now attempts to blame her—and the government, for not successfully prosecuting her for her role in defendant's fraud—in an attempt to garner a lesser sentence of imprisonment from this Court.  He casts himself as defender of the victims of *his own Ponzi scheme*, stating that "the Court, Mr. Wise, and others (particularly the investor-victims), deserve adequate and appropriate explanations from these government counsel as to why Mr. Wise has not earned their recommendation for a downward departure" and that "[t]he Court, Mr. Wise, and the victims also deserve an answer to the related questions as to why all the fraud charges against Ms. Hoegel were dismissed."  Dkt. 115 at 8–9.  These self-righteous inquiries and deflections make it difficult to believe that defendant truly feels remorse for the massive harm he has caused his victims and society.

## CONCLUSION

The government respectfully requests that this Court sentence defendant to a low-end sentence of 262 months imprisonment.

DATED: January 30, 2015                    Respectfully submitted,

                                           MELINDA HAAG
                                           United States Attorney


                                           _____/s/_____
                                           ROBIN L. HARRIS
                                           BENJAMIN KINGSLEY
                                           Assistant United States Attorneys

**SENTENCING MEMORANDUM**
Case Nos. 12-CR-00111 & 12-CR-00642 EMC            5